DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cr-0035 |
| ) | |
| HERCULE MUNTEAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**APPEARANCES:**

**Delia L. Smith, United States Attorney**
**Natasha Baker, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
  *For the United States of America,*

**Adam G. Christian**
Ogletree Deakins Law Firm
St. Thomas, U.S.V.I.
  *For the Defendant Hercule Muntean.*

## MEMORANDUM OPINION

**MOLLOY, C.J.**

**BEFORE THE COURT** is the United States' (the "Government") Emergency Motion to Revoke the Magistrate Judge's Order of Release and Stay the Release Order Pending the Outcome of this Motion. (ECF No. 86.) For the reasons outlined below, the Court will grant the Government's motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

As alleged in the Affidavit in Support of a Criminal Complaint, ECF No. 1-1, on December 7, 2022, Defendant Hercule Muntean ("Muntean") and six co-defendants — Clementina Rostas, Argentina Razmies, Ion Razmies, Alexandru Panait, Gheorghe Varga, and Florian Muntean—were approached while boarding a passenger ferry from St. John to St. Thomas by the United States Border Patrol ("USBP") after appearing to match photographs of a group of Romanian citizens suspected of illegally entering the United States. *See* ECF No.

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 2 of 3

1-1. The affidavit further alleges that all defendants stated that they were Romanian nationals who were illegally present in the United States. *See id.* at 3. All defendants were arrested and charged with illegal entry under 8 U.S.C. § 1325(a). *See* ECF No. 1-1. On December 15, 2022, a grand jury returned a one-count indictment charging Muntean and his co-defendants with the same. *See* ECF No. 23.

On December 12, 2022, the Government moved for detention. *See* ECF No. 13. Muntean filed his opposition to the motion on December 19, 2022,[1] arguing that he should be released on his own recognizance, and alternatively proposing his brother Bobi Muntean as a third-party custodian. *See* ECF No 38 at 3.[2] On December 21, 2022, Muntean filed a Motion for Appointment of Substituted Third Party Custodian, in which he withdrew his proposal of Bobi Muntean as third-party custodian and proposed Rebecca Cornea ("Cornea") of Riverside, California, as a substitute third party custodian. (ECF No. 42 at 1.)

A detention hearing was held before Magistrate Judge Ruth Miller of the District Court of the Virgin Islands on December 22, 2022. During the hearing, counsel for Muntean reiterated the withdrawal of Bobi Muntean, representing to the Court that, after discussions with the United States Probation Office, there appeared to be red flags with regard to his suitability as a third-party custodian. Counsel further averred that, after finding similar issues of suitability with a second proposed custodian, counsel identified Cornea as a proposed third-party custodian.

The same day, on December 22, 2022, the Magistrate Judge issued an Order setting conditions of release for Muntean which set the following conditions, *inter alia*: (1) requiring that he submit to location monitoring technology; (2) placing him on home incarceration; (3) restricting his travel to St. Thomas, VI and Riverside, California (and airport); and (4) placing him in the custody of Cornea. *See* ECF No. 69.

On December 26, 2022, the U.S. Probation Office issued a status report, stating the following:

---

[1] Defendant also filed an opposition on December 18, 2022, virtually identical to the latter response. *See* ECF No. 35.

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 3 of 4

> On Friday, December 23, 2022, the defendant was scheduled to depart the Cyril E. King Airport at 4:11p.m. on American Airlines flight AA2988 to Los Angeles International Airport (LAX) via Charlotte Douglas International Airport (CLT). Contact was made with the defendant's third-party custodian on Saturday, December 24, 2022 . . . . At that time, she advised that the defendant had not arrived to her in California as scheduled, and had reported to her that he was detained in St. Thomas by Immigration and Customs Enforcement for several hours of questioning, causing him to miss his flight. . . . Upon checking the defendant's location history, it was determined that on Friday, December 23, 2022, the defendant did depart the Cyril E. King Airport. However, he traveled to Miami, Florida, then took ground transportation to Orlando, Florida, to an address on Flori Lane. The defendant was confronted and provided several inconsistent stories about his whereabouts and how he was able to travel there. Due to the Christmas holiday, the defendant's third-party custodian was unable to secure another flight to LAX until Monday, December 26, 2022, on a direct flight from Orlando International Airport (MCO) to LAX.
>
> On December 26, 2022, at 3:09 p.m., the defendant's third-party custodian made contact with the U. S. Probation Officer. In frustration, she advised that the defendant's scheduled flight had arrived, and she had been waiting at the airport for several hours, with no sign of the defendant. She had also made several unsuccessful attempts to contact the defendant via phone. The U.S. Probation Officer also made attempts to contact the defendant to no avail. A check of the defendant's location monitoring device showed his last known location as the Philadelphia International Airport in Pennsylvania. At 5:31 p.m. the defendant made contact with the U.S. Probation Officer to advise that he had just arrived in Los Angeles. . . . He again claimed to have missed his flight, causing him to make alternate arrangements through another city.
>
> Subsequent conversations with the third-party custodian revealed she no longer wished to serve as the defendant's third-party custodian due to his continued dishonesty since release and lack of communication. . . . Hence, she withdrew her availability to serve as his third-party custodian.

(ECF No. 86-2 at 2-3.)

On December 27, 2022, the Government filed a motion to revoke order of release, arguing that Muntean had failed to follow the Court's orders and report to his third-party custodian, and had been "less than candid about his whereabouts." (ECF No. 56 at 2.) The Government further averred that Cornea no longer "trust[ed] [Muntean] to continue the responsibility of third-party custodianship." *Id.* The Government argued that because

Muntean had "proved . . . that he will not abide by the court's orders," and because he no longer had a third-party custodian in place, his conditions of release should be revoked, and a warrant issued for his arrest. *Id.* A warrant was issued for Muntean's arrest on December 27, 2022, for the following reasons: (1) Failure to Report as Directed, (2) Failure to Comply with Home Incarceration Condition, and (3) Travel Without Permission. *See* ECF No. 86-2 at 1. Muntean was arrested on the warrant on January 4, 2023, in Santa Ana, California. *See id.*

On January 4, 2023, Muntean appeared before Magistrate Judge John D. Early of the United Stated District Court for the Central District of California. *See* ECF no. 86-1. The Government moved for detention, which was denied. *See id.* at 1. The court issued an Order restricting Muntean's travel to the residence of his brother, Bobi Muntean, in Orlando, Florida, and ordering Muntean to report to the District Court of the Virgin Islands on or before January 13, 2023. *Id.* In response to an ex-party application by the Government, the court subsequently issued an order staying Muntean's release until 3:00 p.m. Pacific Standard Time "to allow the charging district to appeal defendant's release." (ECF No. 86-3.)

The Government filed the instant motion on January 6, 2023, seeking a revocation of the Order of release issued on January 4. *See* ECF No. 86. In its motion, the Government argues that Muntean's illegal entry into the country "inherently evidences a desire not to follow legal procedures," that the weight of the evidence against Muntean is strong, that he has "no known ties" to the United States, and that he has been "flagged" by law enforcement for international criminal activity. *Id.* at 6-7. The Government further argues that Muntean "has proven by his actions during the case (that is, by his actions after his initial release), that he is a risk of flight" and "bonds are not sufficient to ensure his compliance." *Id.* at 7. Muntean opposes this motion. *Id.* at 1 n. 1.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . ." A district court reviews a magistrate judge's order of detention *de novo*. *See United States v.*

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 5 of 6

*Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985). However, the court may rely on the evidence presented before the magistrate judge. *See United States v. Koenig*, 91 F.2d 1190, 1193 (9th Cir. 1990) (explaining that, when hearing motions pursuant to 18 U.S.C. § 3145, "the district court is not required to start over in every case").

Pretrial detention of a criminal defendant will be ordered only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) ("The Bail Reform Act of 1984 authorizes judicial officers to grant persons charged with federal offenses release on bail unless it is determined that 'such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'") (quoting 18 U.S.C. § 3142(b)). In determining whether any conditions of release can reasonably assure the defendant's appearance in court and the safety of the community, a court must consider the following four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1491, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986) ("The statute requires that in determining whether there are conditions of release that will

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 6 of 7

reasonably assure such appearance and safety, the judicial officer shall take into account the available information concerning (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person and the community that would be posed by the person's release."). To justify pretrial detention, the Government must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence. *United States v. Richardson*, 52 V.I. 561 (D.V.I. July 9, 2009) (citing *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir.1986)); 18 U.S.C. § 3142(f).

### III. DISCUSSION

The Government seeks to an order revoking Magistrate Judge Early's order releasing Muntean pending his appearance before the Court for further revocation proceedings. After carefully considering the factors prescribed under 18 U.S.C. § 3142(g), *de novo*, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of [Muntean] as required and the safety of any other person and the community," during this time-frame. *Id.*

*1. Nature and Circumstances of the Offenses Charged*

First, the Court must consider the nature and circumstances of the offense at hand. Muntean and his co-defendants are charged with illegal entry into the United States in violation of 8 U.S.C. § 1325. This is a nonviolent misdemeanor offense carrying a maximum sentence of six months imprisonment for the first offense, and two years for subsequent offenses. *See* 8 U.S.C. 1325(a). This treatment by Congress indicates that it is not intended to be considered a particularly serious offense. Moreover, the specific circumstances surrounding Muntean's arrest are themselves unremarkable. Muntean and his codefendants appear to have promptly disclosed their illegal status to USBP officers and there is no evidence of anything besides cooperation on the defendants' behalf. Therefore, the Court finds that this factor militates against detention.

*2. Weight of the Evidence Against Defendant*

Second, the Court considers the weight of the evidence against Muntean. *See* 18 U.S.C. § 3142(g)(2). Several courts have recognized that "the weight of the evidence is the least

important of the various factors." *See United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (internal quotation marks omitted); *see also United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) ("Courts generally consider the Weight Factor as the least important of the Factors." (internal quotation marks omitted)). Though the weight of evidence is relevant, the function of 18 U.S.C. § 3142 is not to make a preliminary determination of innocence or guilt. *See* 18 U.S.C. § 3142(g); *see also United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) ("[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment."). Rather, this factor "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408.

Here, the weight of the evidence against Muntean includes the statements made to USBP officers before and after his arrest. Those statements present strong evidence against Muntean, and therefore provide substantial incentive to flee. *Cf. United States v. Sabhnani*, 493 F.3d 63, 76 n.17 (2d Cir. 2007) ("[I]n light of direct evidence from the victims of the charged forced labor and corroborative evidence of the violence used against them, we must conclude . . . that this § 3142(g)(2) factor weighs against defendants in assessing their risk of flight."). Furthermore, the U.S. Probation Office presented ample evidence that Muntean's bail should be revoked for failure to adhere to at least three conditions of release, as enumerated in Magistrate Judge Miller's arrest warrant. Again, the Court finds that such evidence provides substantial incentive to flee. As such, the Court finds that the weight of the evidence weighs toward the conclusion that no condition or combination of conditions will reasonably assure Muntean's appearance as required.

*3. History and Characteristics of Defendant*

The Court next considers the history and characteristics of Muntean. Muntean is a Romanian national with minimal ties to the United States, which include two brothers who live in Orlando, Florida. *See* ECF No. 38 at 2. The Government alleges that Muntean has been flagged by law enforcement for international criminal activity, which Muntean denies. *See id.* at 3.

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 8 of 9

However, it is Muntean's most recent behavior that is of the most concern to the Court. Muntean has flagrantly disobeyed the Court's orders on a consistent basis since the moment he was granted his initial release on December 22, 2022. He traveled outside of his restricted areas, failed to remain in contact with his then-custodian and U.S. Probation officer, and likely was not truthful when on the occasions that he was able to be contacted. His actions were so concerning that his approved third-party custodian withdrew as custodian. The Court can see no reason why Muntean should be trusted to abide by any further court-imposed conditions when he has egregiously failed to do so until this point. Therefore, the Court finds that this factor weighs heavily in favor of detention pending revocation proceedings.

*4. Nature and Seriousness of Danger Posed by Defendant's Release*

The fourth and final factor demands that the Court consider the "nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). Muntean has no known history of violence or prior to the instant case. Additionally, for the reasons discussed above, the charges at hand are not themselves considered dangerous.

However, Muntean's unpredictability is of great concern to the Court. Currently, Muntean lacks a third-party custodian. Magistrate Judge Early's January 4, 2023 order setting conditions of release applied a travel restriction to Bobi Muntean's residence, however it did not establish Bobi Muntean as a third-party custodian. *See* ECF No. 86-1 at 2-3. This lack of supervision provides ample opportunity for other criminal activity, which the Court cannot discount given Muntean's duplicitous and erratic behavior since his release. Therefore, with regard to danger to the community, this factor weighs in favor of detention pending revocation proceedings.

## IV. CONCLUSION

Weighing, *de novo*, all four factors under 18 U.S.C. § 3142(g) to assess Muntean's risk of flight and dangerousness to the community, the Government has established a risk of flight by a preponderance of evidence. The Government has further established that no condition or combination of conditions of release will reasonably assure the safety of any other person

*United States v. Muntean*
Case No. 3:22-cr-0035
Memorandum Opinion
Page 9 of 9

and the community by clear and convincing evidence. Accordingly, the Government's motion is granted, and Muntean shall remain in custody pending revocation proceedings. An appropriate order follows.


**Dated:** January 6, 2023                     /s/ *Robert A. Molloy*
                                               **ROBERT A. MOLLOY**
                                               **Chief Judge**